IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT, | § § § § | CIVIL ACTION 6:20-CV-00577-ADA |
| Plaintiff, | § § | |
| v. | § § § | PATENT CASE |
| GOOGLE LLC, | § § § | |
| Defendant. | § | JURY TRIAL DEMANDED |

**RESPONSE OPPOSING DEFENDANT'S MOTION TO DISMISS PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

There is no merit to Google LLC's ("Google's" or "Defendant's") allegation that WSOU Investments, LLC ("WSOU") failed to state a claim under Rule 12(b)(6). Google's motion is based entirely on a flawed, undefended and premature premise—that WSOU purportedly "relies on, indeed, it expressly alleges, at least two distinct actors to allege direct infringement—Google and a third party user." Dkt. 16 ("Mot."), 1.

First, Google fails to defend its premature claim construction position that claim 1 of U.S. Patent No. 8,751,585 ("the '585 patent") expressly requires multiple actors. As explained further below, dismissal is inappropriate where the court has yet to resolve this claim construction issue. Even if the court were inclined to consider (at the pleading stage) Google's undefended claim construction position, other courts have repeatedly denied as premature similar motions to dismiss asserting that a method claim requires multiple actors. Google compounds its error in mischaracterizing the pleadings as conceding that Google's "multi actor" interpretation of claim 1 is correct—i.e., that claim 1 expressly restricts performance of certain steps to "a [third party] user" and it restricts performance of the "moving" step to "Gmail (the electronic message client)." Mot. 5, 8. The pleadings speak for themselves in refuting Google's mischaracterization.

Second, among other pleadings providing sufficient notice of direct infringement, the complaint sufficiently pleads that Google itself has used and continues to use the accused instrumentality as claimed. *See*, *e.g.*, Dkt. 1 ¶¶ 45, 65.  In other words, the pleadings sufficiently allege the cook eats its own cooking.  Notably, the relevant pleadings concerning example actions attributable to Google alone are not affected by Google's premature and undefended claim construction that claim 1 expressly requires multiple actors.

Third, the pleadings provide sufficient notice to support an alternative theory of joint infringement, even under Google's undefended "multi actor" construction.  Relying on its undefended "multi actor" claim construction, Google asserts the pleadings fail to satisfy the "single entity" rule ostensibly because they "do[] not include even conclusory allegations that Google exercises direction or control over Gmail users or that there is a joint enterprise between Google and Gmail users, much less any facts in support of the same." Mot. 9.  At a minimum, Google fails to consider that vicarious liability arises where an actor profits from infringing acts of another and has the right and ability to stop or limit the infringement.  It cannot reasonably be disputed, nor does Google dispute in its motion, that Google profits from the direct infringement alleged and has the ability (as the provider of Gmail) to stop or limit the infringement alleged.  For example, Google publicly admits via its website that it generates advertisement based on use of Gmail and that Google can and does restrict its Gmail services.

Fourth, Google compounds its error in seeking to dismiss the direct infringement claims under the false premise that only a single method claim (claim 1) is asserted.  Claim 9, the only other independent claim of the '585 patent, is directed to a "communication system" and recites certain functionality analogous to what is recited in claim 1 (albeit in a distinct system format).  Given similar claim language recited in independent claims 1 and 9 and the allegation that Google infringes "at least claim 1" (Dkt. 1 ¶ 64), Google has been put on sufficient notice that claim 9 also stands accused under analogous reasoning.

Fifth (and Sixth), there is no merit to Google's allegation that the pleadings fail to state a claim of indirect infringement under theories of either inducement or contributory infringement.

Google's primary argument is that without direct infringement, there can be no indirect infringement. Google's assertions concerning *indirect* infringement, therefore, are tainted by the same deficiencies concerning *direct* infringement. Regarding the inducement claims in particular, Google misapplies the proper analysis and, consequently, fails to recognize that the pleadings at least sufficiently allege Google had knowledge of the '585 patent and performed various activities with specific intent to induce others. Regarding the contributory infringement claims in particular, Google fails at least to address whether *the specific example features of Gmail* identified in the pleadings have no substantial non-infringing uses.

For a myriad of reasons, therefore, Google has failed to establish WSOU has not pled factual content that allows the Court to draw the reasonable inference that Google is liable for either direct or indirect infringement. Google's motion to dismiss WSOU's infringement claims should be denied in its entirety.

## ARGUMENT

### A. Legal Standard

Googles moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). To survive 12(b)(6) dismissal, a plaintiff must plead enough facts to state a claim to relief that is both legally cognizable and plausible on its face, but the court should not evaluate the plaintiff's likelihood of success. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). In the patent context, "a patentee need only plead facts sufficient to place the alleged infringer on notice as to what he must defend." *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007).

In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are "viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). A claim cannot be dismissed under Rule 12(b)(6) unless the plaintiff "would not be entitled to relief under any set of facts or any possible theory that [it] could prove consistent with the allegations in the complaint." *Muhammad v. Dallas Cnty. Cmty. Supervision & Corrs. Dep't*, 479 F.3d 377, 380 (5th Cir. 2007) (citing *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)); *Altman*, 2012 WL

4033336, at *1. In other words, it must appear beyond doubt that the plaintiff can prove no set of facts in support of their claim entitling them to relief. *Griffith v. Kroger Co.*, No. 9:05-CV-76-TH, 2008 WL 11347989, at *2 (E.D. Tex. Mar. 7, 2008) (citing *Conley v, Gibson*, 355 U.S. 41, 45–46 (1957)); *see also ESW HOLDINGS, INC., Plaintiff, v. ROKU, INC.*, Defendant., 6:19-CV-00044-ADA, 2019 WL 10303653, at *1–2 (W.D. Tex. May 13, 2019).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim has "facial plausibility" and must not be dismissed "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Dismissal under Rule 12(b)(6) is inappropriate where fact discovery could affect the court's analysis. *See Syte - Visual Conception Ltd.*, 2020 WL 278481 at *6 (denying Rule 12(b)(6) motion because fact discovery could affect the court's § 101 analysis).

### B. WSOU alleges a plausible claim for direct infringement.
#### 1. Google's motion is premised on a premature and undefended "multi actor" claim interpretation and a mischaracterization of the pleadings.

Google mischaracterizes the pleadings as alleging that claim 1 expressly requires two distinct actors. Google identifies the supposed "two distinct actors" as "Google (Gmail) and one or more third party users of Gmail." Mot. 5 ("Despite purporting to allege direct infringement by Google alone, WSOU relies on at least two distinct actors for the alleged performance of the claimed method, Google (Gmail) and one or more third party users of Gmail."). According to Google, claim 1 requires one or more "third party users" (a qualified term that does not appear in claim 1 or the pleadings) to perform the overarching "using" step (which comprises the "selecting," "assigning," and "defining" steps). Google further asserts claim 1 restricts performance of the

"moving" step to the "electronic message client" (a term not recited in the "moving" step), to the exclusion of the user. *Id*. Google fails to defend *its* construction of claim 1, which Google erroneously attributes to the pleadings.

It is generally "inappropriate to resolve a claim construction dispute on a motion to dismiss for failure to state a claim of infringement[.]" *Regents of Univ. of Michigan v. Leica Microsystems Inc.*, 19 CV-07470-LHK, 2020 WL 2084891, at *6 (N.D. Cal. Apr. 30, 2020); *Slyce Acquisition Inc. v. Syte-Visual Conception Ltd.*, W-19-CV-00257-ADA, 2020 WL 278481, at *5 (W.D. Tex. Jan. 10, 2020) (finding Rule 12(b)(6) motion to dismiss under § 101 should be deferred until after claim construction). More specifically, dismissal is inappropriate where the court has yet to resolve the legal issue, which Google's motion fails to squarely address, concerning whether claim 1 necessarily requires multiple actors. *See Technology Patents LLC v. T-Mobile (UK) Ltd.*, 700 F.3d 482, 501 (Fed. Cir. 2012) (vacating a summary judgment of noninfringement, and remanding, as to certain claims because the district court erred in finding that the claims required multiple actors and raised a divided infringement issue); *see also Meyer Intellectual Properties Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1367 (Fed. Cir. 2012) (ruling that term "providing" was broad enough that it could cover a customer's setting up the device, and therefore did not require the joint action of the accused infringer selling the device to the customer).

Even if the court were inclined to consider (at the pleading stage) Google's undefended claim construction position that claim 1 expressly requires multiple actors, other courts have repeatedly denied as premature similar motions to dismiss asserting that multiple actors are required. *See, e.g.*, *Tune Hunter Inc. v. Samsung Telecommunications Am., LLC*, No. CIV.A 209CV148TJW, 2010 WL 1409245, at *5 (E.D. Tex. Apr. 1, 2010) (denying motion to dismiss stating that though the asserted claims require multiple actors, plaintiff is not required to "crystallize its theory of infringement without having the benefit of discovery to aid it" and "[t]he Court will be in a better position to consider this argument should Defendants raise it in a motion for summary judgment"); *Actus, LLV. V. Bank of Am. Corp.*, No. 09 Civ. 2010 WL 547183 (E.D. Tex. Feb. 10, 2010) (denying as premature defendant's motion to dismiss for failure to allege any

theory of joint infringement or any facts that would support joint infringement stating that the "Court does not require that plaintiffs in a patent infringement lawsuit attach fully-developed infringement contentions to its complaint."); *Vellata, LLC v. Best Buy Co., Inc.*, No. CV 10-6752, 2011 WL 61620, *3, *4 (C.D. Cal. Jan. 7, 2011) (rejecting a defendant's argument that the plaintiff failed to state a claim under Rule 12(b)(6) for infringement because plaintiff's claims included limitations requiring actions to be performed by outside users accessing a web page, even though the complaint did not contain allegations that the defendant performed, directed, or controlled the steps of a claimed method, pursuant to the standard for direct infringement).

Not only is Google's tacit claim construction position premature, it is undefended. At a minimum, Google's undefended construction of claim 1 fails to identify anything in the "using" step (which comprises the "selecting," "assigning," and "defining" steps) expressly restricting performance of the recited gerunds to a user only, much less a "third party user" as Google alleges. While claim 1 expressly defines an "inbox" as being "associated with a user," Google fails to explain why the "using" step must itself be performed by the user. Google also fails, for example, to explain why the "moving" cannot also be performed by the user and must, instead, be performed by the electronic message client (a term not recited in the "moving" step). In short, all Google offers is the conclusory assertion that the Court should adopt Google's premature and undefended "multi actor" claim interpretation because Google says so.

The deficiency of Google's motion is further underscored by contrasting the present facts to those at issue in *De La Vega v. Microsoft Corp.*, No. W-19-CV-00612-ADA, 2020 WL 3528411, at *1 (W.D. Tex. Feb. 11, 2020)—a case Google cites as allegedly supporting dismissal (Mot. 9). Unlike here, the Court observed there that "Plaintiff contends that infringement of claim 1 requires three actors[.]" *De La Vega*, 2020 WL 3528411, at *3. Unlike here, the method at issue in that case used the word "by" to expressly tether performance of a particular operative gerund to a particular claim element—i.e., "providing . . . *by a camera*." *Id*. at *1. Google fails to provide a reasoned analysis keyed to any specific claim language or the pleadings at bar to explain why *De La Vega* is applicable here.

Google compounds its error in mischaracterizing the pleadings as conceding that Google's "multi actor" interpretation of claim 1 is correct—i.e., that claim 1 expressly restricts performance of certain steps to "a [third party] user" and the restricts performance of the "moving" step to "Gmail (the electronic message client)." Mot. 5, 8. Specifically, according to Google, the complaint "relies on a user to . . . perform the steps of 'selecting' an email from the inbox, 'assigning' an archiving rule to that email that is triggered by an action, and 'defining' an archive location to which that email will be moved. Mot. 8 (citing Dkt. 1, ¶¶ 51, 52 and 55). Google then suggests that the complaint only "alleges that [Google's] Gmail . . . performs the remaining step of 'moving' the selected email to the location defined by the user." *Id*. (citing Dkt. 1 ¶ 56). The pleadings speak for themselves in refuting Google's mischaracterization.

The complaint itself offers no concession that claim 1 expressly requires multiple actors. At a minimum, Google overlooks factual allegations supporting a theory of direct infringement where *each step* of claim 1 is attributed to actions of a user or, alternatively, where *each step* of claim 1 is attributed to actions of a system. *See*, *e.g.*, Dkt. 45 ¶¶ 45−68. This reflects the fact that claim 1 is agnostic as to what and/or who performs the "using" steps and the "moving" step. *Id*. While Google alleges the complaint is tethered to an understanding that only the Gmail client performs the "moving" step, to the exclusion of the user, the very paragraph of the complaint Google cites to provides allegations recognizing the "moving" step may be attributed to user action:

> Gmail provides *users to move* the selected e-mail to archived (i.e. archive location) after the filtering process (i.e. detection of the action defined in the archiving rule). For example, *a user selects* the email titled "Google Play" *to start the process of moving it to archive*.

Dkt. 1 ¶ 56 (emphasis added); *see also* Mot. 8 (citing the same). The complaint further alleges, for example, that "[t]he e-mail moves according to action. For example, *when a user selects* the 'Skip the Inbox' option, the e-mail is archived." Dkt. 1 ¶ 55 (emphasis added).

Thus, the pleadings contain allegations applicable to an understanding that *a single actor*

may directly infringe by satisfying all method steps of claim 1. Google fails to consider the complaint as a whole, including allegations supporting a theory of direct infringement in the event that each step of claim 1 is attributed to a single actor, as opposed to multiple distinct actors. Given Google acknowledges the complaint contains allegations identifying example "selecting," "assigning," and "defining" actions performed by the user (Mot. 8), and further given the complaint contains allegations identifying example "moving" actions also attributed to the user (Dkt. 1 ¶¶ 55−56), the pleadings clearly do not concede that claim 1 necessarily requires multiple actors.

For the foregoing reasons, the motion should be denied as (1) being premised on an undeveloped claim construction position that is premature under the circumstances; (2) failing to provide the court any rational or evidentiary basis to adopt Google's premature and undefended claim construction position; and (3) falsely asserting that the pleadings concede Google's "multiple actor" interpretation of claim 1 is correct.

### 2. The complaint sufficiently pleads direct infringement at least where Google has used and continues to use the accused instrumentalities.

Google's motion also overlooks pleadings alleging that Google directly infringes when Google itself performs all the recited steps of claim 1. Google does not deny in its motion (or even acknowledge) the allegation that Google can and does use Gmail in the manner claimed. This occurs, for example, when a Google employee uses Google's Gmail system. In other words, Google has eaten and continues to eat its own cooking.

This theory of direct infringement is reflected in multiple allegations in the complaint. The complaint alleges, for example, that Google itself is a "user" within the context of the claim language because it not only makes but also uses the accused instrumentality. *See*, *e.g.*, Dkt. 1 ¶ 45 ("Google makes, uses . . . Gmail."); *id.*, ¶ 65 ("Google continues to directly infringe at least one claim of the '585 Patent, literally or under the doctrine of equivalents, by making, using, . . . the Accused Products . . . ."). Try as it might, Google cannot rewrite the pleadings as being "expressly" limited, instead, to what only Google's motion refers to as "a *third party* user." Mot. 1 (emphasis

added); *see also id.*, 5.  The contrived "third party" qualifier appears nowhere in the complaint.

Dismissal is inappropriate at least because the pleadings provide factual content that allows the court to reasonably infer that the alleged infringement of each step of claim 1 is at least performed by Google when its employees use Google's Gmail system.  *See Iqbal*, 556 U.S. at 678 (holding a claim is plausible on its face if the nonmovant pleads factual content that allows the court to reasonably infer that the movant is liable for the alleged misconduct).  This is true regardless whether the court is inclined to consider Google's undefended and premature "multi actor" claim interpretation for claim 1.  In other words, there cannot be even a contrived joint infringement issue where Google itself both provides and uses the accused instrumentalities.

> **3. The pleadings provide sufficient notice to support an alternative theory of joint infringement, even under Google's undefended "multi actor" construction.**

It is unclear why and under what authority Google seeks dismissal for allegedly failing to state a claim as to joint infringement, given Google alleges that the complaint does not even assert joint infringement.  Mot. 1.  How can a claim of infringement be dismissed that, according to Google, is not even stated in the pleadings?  Google does not say.  As explained above, another reason Google's argument concerning joint infringement is of no moment here is that it is premised on an undefended and premature claim construction position—namely, that claim 1 expressly requires multiple actors.

Setting aside that Google's joint infringement theory is dependent upon a premature and undefended interpretation that claim 1 requires multiple actors, and notwithstanding the court has yet to even consider much less adopt such a construction, what follows are example pleadings that are also relevant to a theory of joint infringement, even under a "multi actor" construction for claim 1.  WSOU provides this rebuttal only out of an abundance of caution and for the sake of completeness; and it should not be taken as a concession that Google's undefended construction is correct.[1]

---

[1] To the extent the court finds the pleadings do not sufficiently support an alternative theory of

As explained above, Google's joint infringement argument is based on the unexplained and undefended interpretation that claim 1 restricts performance of the "using" steps to what Google newly coins as a "third party user" and claim 1 further restricts performance of the "moving" step to the "electronic message client." Mot. 1, 5.  Based on this interpretation, Google asserts the pleadings violate the "single entity" rule ostensibly because they "do[] not include even conclusory allegations that Google exercises direction or control over Gmail users or that there is a joint enterprise between Google and Gmail users, much less any facts in support of the same." Mot. 9.

The Federal Circuit has expressed the "single entity" rule for method claims as follows: "[d]irect infringement under § 271(a) occurs where all steps of a claimed method are performed by or attributable to a single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (*en banc*).  The key inquiry, "[w]here more than one actor is involved in practicing the steps," is whether "the acts of one are *attributable* to the other such that a single entity is responsible for the infringement." *Id*. (emphasis added).

An entity would be held responsible for the performance of method steps by others at least "where that entity directs or controls others' performance," or "where the actors form a joint enterprise." *Id*.  A single entity directs or controls the acts of another, for example, "when an alleged infringer conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner and timing of that performance" ("the benefit test").  *Id*. at 1203.  In addition, an accused infringer can be held vicariously liable for actions of another if it "'profit[s] from direct infringement' . . . [and] has the right and ability to stop or limit the infringement." *Id.* (citation omitted); *accord Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370, 1385 (Fed. Cir. 2017).  "Whether a single actor directed or controlled the acts of one or more third parties is a question of fact . . . ." *Id*.

The Federal Circuit has since explained that *Akamai* "'broaden[ed] the circumstances in which others' acts may be attributed to an accused infringer to support direct-infringement liability

---

joint infringement in any respect, WSOU should be permitted (and hereby requests authorization) to file an amended complaint.

for divided infringement, relaxing the tighter constraints on such attribution reflected in our earlier precedents.'" *Nalco Co. v. Chem-Mod*, LLC, 883 F.3d 1337, 1351 (Fed. Cir. 2018) (alteration in original) (quoting *Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370 (Fed. Cir. 2017), which quotes *Mankes v. Vivid Seats Ltd.*, 822 F.3d 1302, 1305 (Fed. Cir. 2016)).

Under these guiding principles, the pleadings contain sufficient facts to support a theory of joint infringement even under Google's undefended and premature "multi actor" interpretation. It cannot reasonably be disputed, nor does Google dispute in its motion, that Google both profits from the direct infringement alleged and that it has the ability (as the provider of Gmail) to stop or limit the infringement alleged. The references identified in the complaint (*see*, *e.g.*, Dkt. 1 ¶¶ 42−67) provide links to Google's Terms and Services applicable to Gmail (also available directly at https://policies.google.com/terms?gl=US&hl=en), the content of which Google itself controls. Google provides in its current Terms and Services that "If we reasonably believe that any of your content (1) breaches these terms, service-specific additional terms or policies, (2) violates applicable law, or (3) could harm our users, third parties, or Google, then we reserve the right to take down some or all of that content in accordance with applicable law." *Id*. Google's online documentation also admits (*e.g.*, in its Terms and Services) that Google advertises based on Gmail use. *Id*. This is one example by which Google profits from the accused instrumentalities.

Accordingly, the pleadings allege facts sufficient to provide notice of infringement even if claim 1 is construed to require multiple actors, because the claim steps Google attributes to actions of a user may be "attributed" to Google under the circumstances. *Akamai*, 797 F.3d at 1022.

### 4. Google's motion fails to address the sufficiency of the pleadings with respect to the system claims.

Google compounds its error in seeking to dismiss the complaint under the false premise that claim 1 (a method claim) is the only claim asserted. Claim 9, the only other independent claim of the '585 patent, is directed to a "communication system" and recites certain functionality analogous to what is recited in claim 1 (albeit in a distinct system format). Given the similar claim language recited in independent claims 1 and 9 and the allegation that Google infringes "at least

claim 1" (Dkt. 1 ¶ 64), Google has been put on sufficient notice that claim 9 also stands accused under analogous reasoning.[2]

In addressing "use" of a system claim under Section 271(a), the Federal Circuit has observed that "[i]n order to 'put the system into service,' the end user must be using all portions of the claimed invention," and it has also made clear that physical or direct control of all the elements of a system is not required—the user must simply cause those elements to work for their patented purpose. *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011). The complaint also sufficiently pleads direct infringement of at least independent claim 9 (a system claim) under this standard. Indeed, in addressing similar facts, one court held, for example, that that the allegation that an accused infringer "'has used its own games on social media websites' . . . is sufficient to have 'put the invention into service' and constituted 'use' under 35 U.S.C. § 271(a)." *Segan LLC v. Zynga Inc.*, No. CV 11-670-GMS, 2013 WL 12156529, at *1 n.1 (D. Del. May 2, 2013) (citing *Centillion,* 631 F.3d at 1284).

### C. WSOU alleges a plausible claim for indirect infringement under theories of inducement and contributory infringement.

#### 1. Google fails to establish dismissal of inducement claims is warranted.

Google's primary argument concerning inducement to infringe is that without direct infringement, there can be no indirect infringement. Mot. 10−11. As explained above, however, Google's challenge of the direct infringement claims is woefully deficient and thus taints its challenge of indirect infringement. Moreover, this Court has previously noted that questions concerning allegations of indirect infringement (*e.g.*, inducement) "appears to be one for the Court to resolve either at the summary judgment stage or at trial." *Parity Networks, LLC v. Cisco Sys., Inc.*, No. 6:19-CV-00207-ADA, 2019 WL 3940952, at *2 (W.D. Tex. July 26, 2019).

Focusing exclusively on only a single limitation of claim 1, Google also lobs the tangential

---

[2] Even if the Court were to find insufficient notice in the original complaint that claim 9 also stands accused under analogous reasoning, WSOU should be permitted to file an amended complaint (*e.g.*, by amending "at least claim 1" to state, instead, "claims 1 and 9 and their respective dependent claims").

argument that "[t]he Complaint alleges no facts that suggest any connection between Google and Gmail users to encourage them to assign rules to email messages and archive them according to the rules, much less an intent to have them do so." Mot. 11 (citations omitted). Google accompanies its conclusory assertion with citations to the complaint, followed by parentheticals that mischaracterize those citations. *Id*. This is not enough to justify dismissal on the pleadings.

To state a claim for induced infringement, the complaint must allege facts to support that Google had knowledge of or was willfully blind to the fact that the asserted patent existed and that third-party acts, if taken, would constitute infringement of the patents. *See Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015); *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766-70 (2011). Here, the pleadings sufficiently allege Google had knowledge of the '585 patent and performed various activities with specific intent to induce others. *See, e.g.*, Dkt. 1 ¶¶ 66−67. The alleged activities include, "among other things, advertising and promoting the use of the Accused Products in various websites, including providing and disseminating product descriptions, operating manuals, and other instructions on how to implement and configure the Accused Products" in the manner claimed. *Id*. The pleadings also provided references to non-exhaustive examples of relevant Google documentation that Google makes publicly-available online. *Id*. (collecting citations).

At least these example pleadings are analogous to those the Federal Circuit has deemed sufficient to defeat a motion to dismiss. *Nalco*, 883 F.3d at 1355 (denying motion to dismiss where pleadings alleged defendants inducing actions included "providing instructions, support, and technical assistance for the use of the [accused instrumentality]."); *see also Canon, Inc. v. TCL Electronics Holdings Ltd.*, No. 2:18-CV-00546-JRG, 2020 WL 1478356, *5-*6 (E.D. Tex. Mar. 25, 2020) (denying motion to dismiss inducing and contributory infringement claims despite the lack of specifics in how the material the accused infringers disseminated in connection with the accused product encouraged infringement); *Motiva Patents, LLC v. Sony Corp.*, 408 F. Supp. 3d 819 (E.D. Tex. Sept. 27, 2019) (denying motion to dismiss because complaint contained general allegations that the end-user's of the accused software product were the direct infringers and that

the accused infringer through its advertising and instruction manuals encouraged the end user to use the product in an infringing manner).

Moreover, Google's myopic focus on a single limitation of claim 1 runs afoul of at least the following Federal Circuit instruction:

> While ACS and the other Appellees are correct that to prove infringement of a method patent a plaintiff must show that every step of the method is performed in the claimed order, nothing in *Twombly* or *Iqbal* demands this level of factual specificity at the pleading stage. Such a requirement would be dangerously close to requiring a plaintiff to prove he is entitled to relief at the pleading stage. At this stage of the litigation a plaintiff is only required to plead enough facts to enable a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937.
>
> ***
>
> [T]here is no requirement that the facts alleged mimic the precise language used in a claim; what is necessary is that facts, when considered in their entirety and in context, lead to the common sense conclusion that a patented method is being practiced.

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1342 (Fed. Cir. 2012).

For the foregoing reasons, there is no merit to Google's assertion that the pleadings failure to state a claim of induced infringement.

### 2. Google fails to establish dismissal of contributory infringement claims is warranted.

Google fails to establish the pleadings do not adequately state a claim for contributory infringement. Google's primary argument concerning contributory infringement is that without direct infringement, there can be no indirect infringement. Mot. 10−11. As explained above,

however, Google's challenge of direct infringement claims is woefully deficient and thus taints its challenge of indirect infringement.  Moreover, as noted above, this Court has previously noted that questions concerning allegations of indirect infringement (*e.g.*, contributory) "appears to be one for the Court to resolve either at the summary judgment stage or at trial." *Parity Networks,* 2019 WL 3940952, at *2.

The Federal Circuit has repeatedly instructed that "[f]or purposes of contributory infringement, the inquiry focuses on whether the accused products can be used for purposes *other than* infringement."  *Nalco*, 883 F.3d at 1357 (quoting *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1338 (Fed. Cir. 2012) (emphasis in original).

The pleadings provide sufficient notice concerning example features of Gmail that give rise to claims of infringement. *See*, *e.g.*, Dkt. 1 ¶¶ 42−68.  In addressing contributory infringement, the pleadings allege, for example, that "*in view of the preceding paragraphs*, the Accused Products *contain functionality* which is material to at least one claim of the '585 Patent." *Id.*, ¶ 68 (emphasis added).  The pleadings further allege that such features are "adapted for infringing the '585 Patent and have no substantial non-infringing use."  At the pleading stage, these allegations are accepted as true.  Notably, Google does expressly dispute in its motion that the *specific example features* of Gmail identified in the pleadings have no substantial non-infringing use.

The Federal Circuit's decision in *Ricoh Co. v. Quanta Computer Inc.* supports a finding that the pleadings here are sufficient.  *See Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1338 (Fed. Cir. 2008).  "*Ricoh* suggests that a well-pled allegation addressed to the lack of substantial noninfringing uses is sufficient to satisfy the knowledge element of contributory infringement."  *Motiva*, 408 F. Supp. 3d at 834.  Moreover, the contributory infringement pleadings at issue here, which focus on certain exemplary features of Google's Gmail, are similar to pleadings deemed sufficient by other courts.  In *Motiva*, for example, the court denied a motion to dismiss the contributory infringement claim, finding the complaint adequately alleged that the accused products "contain a software component with no substantial noninfringing uses." *Motiva,* 408 F. Supp. 3d at 835. The court further instructed that a patentee need only allege that a software

component does not have any substantial noninfringing uses. This is because "[r]equiring [a patentee] to prove that [the accused infringer]'s software component only has a single use—instead of simply alleging as much—would 'effectively require[ ] [the patentee to prove, pre-discovery, the facts necessary to win at trial,'" and the law does not require this. *Id*. at 836 n.6 (citation omitted).

Google's argument for dismissal of the contributory infringement claims is essentially that a user may opt to not use the example features of Gmail identified in the pleadings. Mot. 13 (arguing that "Gmail does not require a user to assign an archiving rule to the selected email message" and that "a Gmail user can keep all their emails in the inbox without ever moving a single one of them.") (citations omitted). Whether a given user may choose not to use the exemplary features identified in the pleadings is irrelevant to the proper analysis here for contributory infringement. In the context of claim 1, the proper question, which Google does not address, is whether *the specific example features of Gmail* identified in the pleadings have no substantial non-infringing uses. The pleadings are sufficient on this point.

It is telling that Google failed in its motion to offer any explanation, or even an allegation, as to why *the specific example features* of the accused instrumentality identified in the pleadings purportedly have substantial non-infringing uses. Instead, Google retreats to the more generalized, irrelevant, and yet still conclusory statement that "[i]t simply is not plausible to allege that Gmail has no substantial non-infringing uses." Mot. 13. Google's overgeneralization overlooks at least those specific pleadings identifying example infringing features of Gmail.

For the foregoing reasons, there is no merit to Google's assertion that the pleadings failure to state a claim of contributory infringement.

## CONCLUSION

WSOU pleads factual content that allows this Court to draw the reasonable inference that Defendant is liable for the misconduct alleged. Defendant has not shown that WSOU would not be entitled to relief under any set of facts or any possible theory that it could prove consistent with

the allegations in the complaint, and its motion should be denied.[3]

Dated: September 25, 2020                                  Respectfully submitted,

                                                                                                    */s/ Brett A. Mangrum*
                                                                                                    James L. Etheridge
Texas State Bar No. 24059147
Ryan S. Loveless
Texas State Bar No. 24036997
Travis L. Richins
Texas State Bar No. 24061296
Brett A. Mangrum
Texas State Bar No. 24065671
Jeffrey Huang
ETHERIDGE LAW GROUP, PLLC
2600 E. Southlake Blvd., Suite 120 / 324
Southlake, Texas 76092
Telephone: (817) 470-7249
Facsimile: (817) 887-5950
Jim@EtheridgeLaw.com
Ryan@EtheridgeLaw.com
Travis@EtheridgeLaw.com
Brett@EtheridgeLaw.com
JeffH@EtheridgeLaw.com

**ATTORNEYS FOR PLAINTIFF**

---

[3] To the extent the court finds the pleadings deficient in any respect, WSOU should be given an opportunity to replead. The Fifth Circuit has stated that the district courts should "afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

## CERTIFICATE OF SERVICE

I certify that the foregoing document was served upon all counsel of record via email in accordance with the Federal Rules of Civil Procedure on September 25, 2020.

>  /s/ Brett A. Mangrum
>  Brett A. Mangrum