**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **WSOU INVESTMENTS, LLC D/B/A** | § | **CIVIL ACTION 6:20-cv-00576-ADA** |
| **BRAZOS LICENSING AND** | § | **CIVIL ACTION 6:20-cv-00577-ADA** |
| **DEVELOPMENT,** | § | **CIVIL ACTION 6:20-cv-00579-ADA** |
| *Plaintiff,* | § | **CIVIL ACTION 6:20-cv-00580-ADA** |
| | § | |
| **v.** | § | |
| | § | |
| **GOOGLE LLC,** | § | |
| *Defendant.* | § | |
| | § | |

**PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF**

## Table of Contents

I.  Legal Standards ........................................................................................................... 1

  A.    Claim Construction Generally ...................................................................... 1

  B.    Indefiniteness .................................................................................................. 2

II.  U.S. Patent No. 7,946,491 (Case No. 6:20-cv-00580-ADA) ................................... 2

  A.    Disputed terms of the '491 patent which only Google seeks to construe. ................ 2

     1.   "the input image" ........................................................................................2

     2.   "performing a correction on the input image" ................................................3

     3.   "new frame" .................................................................................................4

  B.    Google errs in raising conclusory objections to certain terms, which do not recite the word "means," and therefore presumptive do not invoke 35 U.S.C. 112 ¶ 6, as allegedly being indefinite under a means-plus-function construction. ..................... 5

     4.   "computer program product comprising at least one computer-readable storage medium having computer-readable program code portions stored therein, the computer-readable program code portions comprising …" (claim 13) ...........................5

     5.   "apparatus comprising a processor and memory including computer program code, the memory and the computer program code configured to, with the processor, cause the apparatus at least to . . ." (claim 25) .................................................5

  C.    Google has not and cannot meet its burden to overcome the presumption of definiteness for the "means for" terms recited only in claim 41 of the '491 patent. 9

     6.   "means for processing an input image for an attempt to decode the input image using a current barcode reading method, the processing including performing a correction on the input image" (claim 41) .......................................................9

     7.   "means for determining whether the processing of the input image is successful based on a determination as to whether the correction is completed" (claim 41) ..........11

     8.   "means for switching to one of a different barcode reading method or processing a new frame of the input image using the current barcode reading method in response to the processing of the input image being unsuccessful" (claim 41) ...................................................................................................12

     9.   "means for attempting a decode of the input image using the current barcode reading method in response to the processing of the input image being successful" (claim 41) .....................................................................................14

10. "means for performing a switch to the different barcode reading method in response to a failure of the attempt to decode the input image using the current barcode reading method" (claim 41) ................................................................15

**III. U.S. Patent No. 8,595,283 (Case No. 6:20-cv-00576-ADA)................................ 17**

    **A.   Disputed terms of the '283 patent which only Google seeks to construe.** .............. 17

        1. "a content transfer controller configured to determine an acceptable activity period by monitoring usage of the one or more components over a particular time duration, and wherein the content transfer controller is configured to determine that an acceptable activity period is present when the usage of the one or more components is determined to have been below a particular threshold level over the particular time duration" ........................................................17

        2. "the content transfer controller being arranged: to initiate transfer of the selected item of content from a content provider device according to the determination of an acceptable activity period, to receive the selected item of content, and to store the received item of content on memory" ....................................19

        3. "the selected item of content" ................................................................20

        4. "an acceptable level of device activity" ..................................................21

        5. "monitoring usage of one or more components … over a particular time duration" ........................................................................................21

**IV. U.S. Patent No. 8,640,180 (Case No. 6:20-cv-00579-ADA)................................ 22**

    **A.   Disputed terms of the '180 patent which only Google seeks to construe.** .............. 22

        1. "client-side compositing of media streams".................................................22

        2. "wherein the compositing-instruction substream indicating the area of the display screen to display the at least one media substream is an area to display one of the on screen display and a picture-in-picture" ..................................25

**V.  U.S. Patent No. 8,965,045 (Case No. 6:20-cv-00574-ADA)................................ 26**

    **A.   Disputed terms of the '045 patent which only Google seeks to construe.** .............. 26

        1. "a pre-emptive user output" ..................................................................26

        2. "said processor configured to provide a pre-emptive user output when the sub-set of pixels approaches an edge of the set of available pixels" ....................................29

# Table of Authorities

## Cases

*Al-Site Corp. v. VSI Intern., Inc.,*
  174 F.3d 1308 (Fed. Cir. 1999)...................................................................................... 6

*Am. Med. Sys., Inc. v. Biolitec, Inc.,*
  618 F.3d 1354 (Fed. Cir. 2010).................................................................................... 23

*Ancora Techs., Inc. v. LG Elecs. Inc.,*
  Case No. 1-20-CV-00034-ADA, 2020 WL 4825716 (W.D. Tex. Aug. 19, 2020) .......................... 22, 23

*Azure Networks, LLC v. CSR PLC,*
  771 F.3d 1336 (Fed. Cir. 2014)...................................................................................... 1

*Barkan Wireless IP Holdings, L.P. v. Samsung Electronics Co., Ltd.,*
  Case No. 2:18-CV-28-JRG, 2019 WL 497902 (E.D. Tex. Feb. 7, 2019)................................ 18

*Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.,*
  320 F.3d 1339 (Fed. Cir. 2003)..................................................................................... 22

*Cellular Commc'ns Equip. LLC v. AT&T, Inc.,*
  Case No. 2:15-CV-576-RWS-RSP, 2016 WL 7364266 (E.D. Tex. Dec. 19, 2016)................... 31

*Clear Imaging Research, LLC v. Samsung Electronics Co., Ltd.,*
  Case No. 2:19-cv-00326-JRG, 2020 WL 6384731 (E.D. Tex. Oct. 30, 2020).......................... 30

*Clearstream Wastewater Systems, Inc. v. Hydro-Action, Inc.,*
  206 F.3d 1440 (Fed. Cir. 2000)....................................................................................... 7

*CloudofChange, LLC v. NCR Corp.,*
  No. 6-19-CV-00513-ADA, 2020 WL 4004810 (W.D. Tex. July 15, 2020) ........................... 1

*Collaborative Agreements, LLC v. Adobe Systems Inc.,*
  Case No. A–14–CV–356–LY, 2015 WL 2250391 (W.D. Tex. 2015)................................... 8, 9

*Comark Comm'ns, Inc. v. Harris Corp.,*
  156 F.3d 1182 (Fed.Cir.1998)......................................................................................... 7

*Cont'l Circuits LLC v. Intel Corp.,*
  915 F.3d 788 (Fed. Cir.)......................................................................................... 2, 3, 28

*Crossroads Sys., (Texas), Inc. v. Chaparral Network Storage, Inc.,*
  No. A 00 CA 217 SS, 2000 WL 35731852 (W.D. Tex. July 27, 2000)................................. 8

*Cypress Lake Software, Inc. v. Samsung Elecs. Am., Inc.,*
  382 F. Supp. 3d 586 (E.D. Tex. 2019) ............................................................................. 31

*Fisher-Rosemount Systems, Inc. v. ABB Ltd,*
  Case No. 4:18-CV-00178, 2019 WL 6830806 (S.D. Tex. Dec. 12, 2019) ........................... 31

*Georgetown Rail Equip. Co. v. Holland L.P.,*
  867 F.3d 1229 (Fed. Cir. 2017)..................................................................................... 23

*In re Beauregard,*
  53 F.3d 1583 (Fed. Cir. 1995)......................................................................................... 8

*Karlin Technology, Inc. v. Surgical Dynamics, Inc.,*
  177 F.3d 968 (Fed. Cir. 1999)........................................................................................ 27

*Nautilus, Inc. v. Biosig Instruments, Inc.,*
  572 U.S. 898 (2014)......................................................................................................... 2

*Phillips* v. *AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005)..............................................................................1, 28, 29

*Power Mosfet Techs., L.L.C. v. Siemens AG*,
    378 F.3d 1396 (Fed. Cir. 2004)...........................................................................................20

*Realtime Data, LLC v. Rackspace US, Inc.*,
    2017 WL 2590195, Case no. 6:16-CV-00961 RWS-JDL (E.D. Tex. June 14, 2017)............31

*Samsung Elecs. Am. v. Prisua Eng'g Corp.*,
    948 F.3d 1342 (Fed. Cir. 2020)..................................................................................17, 31

*Shoes by Firebug LLC v. Stride Rite Children's Grp., LLC*,
    962 F.3d 1362 (Fed. Cir. 2020)...........................................................................................23

*Skky, Inc. v. MindGeek, s.a.r.l.*,
    859 F.3d 1014 (Fed. Cir. 2017)...........................................................................................18

*Smith & Griggs Mfg. Co. v. Sprague*,
    123 U.S. 249 (1887).............................................................................................................7

*Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*,
    844 F.3d 1370 (Fed. Cir. 2017).............................................................................................2

*SunRace Roots Enterprise Co., Ltd. v. SRAM Corp.*,
    336 F.3d 1298 (Fed. Cir. 2003)...........................................................................................27

*TomTom, Inc. v. Adolph*,
    790 F.3d 1315 (Fed. Cir. 2015)...........................................................................................24

*Toshiba Corp. v. Imation Corp.*,
    681 F.3d 1358 (Fed. Cir. 2012)...........................................................................................22

*Virginia Innovation Sciences, Inc. v. Amazon.com, Inc.*,
    Case No. 4:18-cv-475, 2019 WL 4259020 (E.D. Tex. Sept. 9, 2019)..................................18

*Williamson v. Citrix Online*, LLC,
    792 F.3d 1339 (Fed. Cir. 2015).........................................................................6, 17, 19, 30

*Zeroclick, LLC v. Apple Inc.*,
    891 F. 3d 1003 (Fed. Cir. 2018)............................................................................................7

**Statutes**

35 U.S.C. § 112.........................................................................................................passim

Plaintiff WSOU Investments, LLC d/b/a Brazos License and Development ("WSOU") submits the following opening claim construction brief pursuant to the Order Governing Proceedings ("OGP") and the Scheduling Order entered in this case.

## I.    Legal Standards

### A.    Claim Construction Generally

The general rule is that claim terms are generally given their plain-and-ordinary meaning. *Phillips* v. *AWH Corp.,* 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc), cert. denied*, 546 U.S. 1170 (2006); *Azure Networks, LLC v. CSR PLC,* 771 F.3d 1336, 1347 (Fed. Cir. 2014), *vacated on other grounds by* 135 S. Ct. 1846, 1846 (2015) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.").

This Court recently explained that "[t]he 'only two exceptions to [the] general rule' that claim terms are construed according to their plain and ordinary meaning are when the patentee (1) acts as his/her own lexicographer or (2) disavows the full scope of the claim term either in the specification or during prosecution." *CloudofChange, LLC v. NCR Corp.*, No. 6-19-CV-00513-ADA, 2020 WL 4004810, at *2 (W.D. Tex. July 15, 2020) (quoting *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). "To act as his/her own lexicographer, the patentee must 'clearly set forth a definition of the disputed claim term,' and 'clearly express an intent to define the term.'" *Id.* (quoting *Thorner,* 669 F.3d at 1365). And "[t]o disavow the full scope of a claim term, the patentee's statements in the specification or prosecution history must represent 'a clear disavowal of claim scope.'" *Id.* (quoting *Thorner,* 669 F.3d at at 1366). "Accordingly, when 'an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable.'" *Id.* (quoting *3MInnovative Props. Co.* v. *Tredegar Corp.,* 725 F.3d 1315, 1326 (Fed. Cir. 2013)).

1

### B.      Indefiniteness

The Patent Act requires claims to particularly point out and distinctly claim the subject matter regarded as the inventions. 35 U.S.C. § 112, ¶ 2. To satisfy this requirement, the claim must be read in light of the intrinsic evidence to determine whether it informs one of skill in the art at the time of the invention "about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910-11 (2014). To establish that a claim is indefinite, a patent challenger must prove indefiniteness by clear and convincing evidence. *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017).

## II.      U.S. Patent No. 7,946,491 (Case No. 6:20-cv-00580-ADA)

### A.  Disputed terms of the '491 patent which only Google seeks to construe.

#### 1.   "the input image"

| WSOU's Position | Google's Position |
|---|---|
| Plain and ordinary meaning. | "the original input image" |

The phrase "the input image" requires no construction, particularly in view of the contexts in which it is recited in the independent claims (1, 13, 25, and 41) of the '491 patent.  In identifying this term for construction, Google does not seek to define either "input" or "image."  Rather, Google uses those same words in its construction, thereby confirming they should simply be afforded their plain and ordinary meaning.  Google errs, however, in seeking to add the extraneous qualifier "original" as an additional limitation.  This would violate the proscription against adding a limitation that is neither required by claim terms nor unambiguously required by either the specification or the prosecution history.  *See*, *e.g.*, *Cont'l Circuits LLC v. Intel Corp.*, 915 F.3d 788, 796–97 (Fed. Cir.), *cert. denied*, 140 S. Ct. 648 (2019); *Dayco Prods., Inc. v. Total Containment, Inc.*, 258 F.3d 1317, 1327 (Fed. Cir. 2001).  While the specification of the '491

patent states the phrase "the input image" *over one-hundred times*, the word "original" is not once stated as a required qualifier.

It should also be noted that Google has yet to explain how its insertion of an "original" qualifier would not depart from the surrounding context in which "the input image" is recited in the claims.  Claim 1, for example, recites certain relevant limitations as follows: "processing an input image …, the processing including performing *a correction on the input image*" (20:19–22), "a determination as to whether the correction *is completed*" (20:24–25), and "attempting a decode . . . in response to *the processing of the input image being successful*" (20:30–32).

### 2.  "performing a correction on the input image"

| WSOU's Position | Google's Position |
|---|---|
| Plain and ordinary meaning. | "correcting the content of the original input image" |

The phase "performing a correction on the input image" requires no construction, particularly in view of the contexts in which it is recited in the independent claims (1, 13, 25, and 41) of the '491 patent.  Google errs in seeking to redraft the phrase "performing a correction on the input image" as, instead, "correcting *the content* of the *original* input image."  Yet again, Google violates the proscription against adding limitations neither required by claim terms nor unambiguously required by either the specification or the prosecution history.  *See*, *e.g.*, *Cont'l Circuits,* 915 F.3d at 796–97; *Dayco*, 258 F.3d at 1327.

Google's error in this respect is compounded.  First, Google doubles down on its erroneous attempt to add an extraneous "original" qualifier, which should be rejected for the reasons discussed above in addressing the dispute over "the input image" term.  Second, Google impermissibly attempts to rewrite "a correction on …" as, instead, "correcting the content of …."  This too should be rejected because the recited phrase "performing a correction on the input image"

is not expressly limited to correcting "the content" of an image.  And because the extraneous couplet "*the* content" has no antecedent basis in the claims, it is unclear as to whether Google had intended, by its impermissible rewrite of the claims, to require that a correction must be performed on the *entirety* of "the content" of the input image.  Far from being unambiguously required, Google's extraneous limitations appear to be at odds with certain disclosure, such as the statement that "corrections" may be "performed only on the previously detected ROI and not on the entire captured image[.]" '491 patent, 11:20–22.  Moreover, a comparison between Figures 4 and 5 of the '491 patent shows that a correction as claimed at least encompasses defining a new region of interest or "ROI" that better aligns with the corners and borders of an unchanged barcode.  *Id*., 16:45–52.

### 3.  "new frame"

| WSOU's Position | Google's Position |
|---|---|
| Plain and ordinary meaning; definite. | Indefinite. |

The phase "new frame" requires no construction, particularly in view of the contexts in which it is recited in the independent claims (1, 13, 25, and 41) of the '491 patent.  Google purports to have preserved the right to challenge "new frame" as being indefinite, yet Google failed to provide sufficient notice—*or any notice for that matter*—as to any cognizable invalidity theory.  At most, Google simply expresses an *intent* to challenge "a new frame of the input image" as indefinite: "[t]he asserted claims in the '491 patent are invalid as indefinite because they recite the limitations 'a new frame of the input image,' 'completed,' and 'the different barcode reading method." *See* Google's Invalidity Contentions dated Dec. 4, 2020 ("580-GIC"), 13.  Google has prejudiced WSOU's present ability to address this dispute because Google has failed to timely disclose the basis for its indefiniteness contention.   Accordingly, Google's conclusory indefiniteness position should be deemed waived.

It is also telling that Google argues, without explanation or any rational underpinning, that the "new frame" term is indefinite, and yet Google expressed no difficulty in porting to offer its own abstraction of the claims that simply restates the same term.  Specifically, in Google's own words, "[a]rguably, the independent claims pertain to a particular application of switching to a different barcode reading method or processing *a new frame* of the input image if correction fails, but *this specific application* of human problem solving does not render it patent-eligible."  *Id*., 12 (emphasis added).  This belies Google's position that "new frame" is itself indefinite.

**B. Google errs in raising conclusory objections to certain terms, which do not recite the word "means," and therefore presumptive do not invoke 35 U.S.C. 112 ¶ 6, as allegedly being indefinite under a means-plus-function construction.**

    **4. "computer program product comprising at least one computer-readable storage medium having computer-readable program code portions stored therein, the computer-readable program code portions comprising …" (claim 13)**

    **5. "apparatus comprising a processor and memory including computer program code, the memory and the computer program code configured to, with the processor, cause the apparatus at least to . . ." (claim 25)**

| WSOU's Position | Google's Position |
|---|---|
| For both term nos. 4 and 5: plain and ordinary meaning; does not invoke 35 U.S.C. § 112, ¶ 6; definite. | For both term nos. 4 and 5: the recited functions are identical to the means-plus-function terms in claim 41, thus the only issue is whether this term invokes Section 112, ¶ 6. |

Google errs in seeking to construe the respective preambles of claims 13 and 25 as expressing nothing more than nonce terms and invoking means-plus-function under 35 U.S.C. § 112, ¶ 6. Specifically, for claim 13, Google characterized the narrowed issue it raises as whether "'computer program code configured to, with the processor, cause the apparatus at least to' [is] a nonce phrase equivalent to 'means for' in claim 41?'"  Exh. A, Letter from Matthew Warren to Jim Etheridge, dated Jan. 12, 2021, 1.  Google raises a similar issue for claim 25.  *Id*.  According to Google, if the respective preambles of claims 13 and 25 invoke Section 112, ¶ 6, then those

claims are allegedly indefinite as lacking "any" corresponding structure, for the same reasons Google raises against the "means for" terms recited in the body of claim 41. *Id*. Google is wrong in both respects. Independent claims 13 and 25 do <u>not</u> invoke Section 112, ¶ 6; and in the sole instance in the '491 patent where Section 112, ¶ 6 is invoked—i.e., in claim 41—the '491 patent discloses sufficient corresponding structure, as discussed below.

Google's erroneous means-plus-function construction of claims 13 and 25 runs afoul of several well-established claim construction canons. First, lack of the word "means" in claims 13 and 25 raises a rebuttable presumption against applying Section 112, ¶ 6. *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015) (*en banc*). While the burden lies with Google to rebut the presumption, it failed to advance any argument or evidence in its Invalidity Contentions (or in its disclosure of extrinsic evidence) as allegedly rebutting, or even addressing, the presumption against applying Section 112, ¶ 6 to claims 13 and 25, where neither claim recites the word "means."

Second, if one claim element in a patent expressly recites a means-plus-function element by using the terms "means for" and another claim element does not, this indicates that the applicant knew how to claim a means-plus-function element when it wanted to and further supports not construing the limitation that does not recite "means for" as a means-plus-function limitation. *Al-Site Corp. v. VSI Intern., Inc.*, 174 F.3d 1308, 1318–19 (Fed. Cir. 1999). While the body of claim 41 introduces *each* limitation in a "means for" format, no other claim of the '491 patent recites "means for" in any context. This claim differentiation signals the applicant's knowledge of how to claim a mean-plus-function, particularly given that claim 41 is even further differentiated by it being the only independent claim of the '491 patent without any claims depending therefrom.

Third, the law has long recognized that each individual claim constitutes a separate invention. *Smith & Griggs Mfg. Co. v. Sprague*, 123 U.S. 249, 256 (1887) ("each of the claims … is a separate and distinct invention").   To give effect to this principle, the doctrine of claim differentiation creates a rebuttal presumption that each claim in a patent has a different scope. Thus, a claim should not be construed in a manner that makes it redundant with any other claim. *Clearstream Wastewater Systems, Inc. v. Hydro-Action, Inc.*, 206 F.3d 1440, 1446 (Fed. Cir. 2000) ("Under the doctrine of claim differentiation, it is presumed that different words used in different claims result in a difference in meaning and scope for each of the claims."); *Comark Comm'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed.Cir.1998) ("There is presumed to be a difference in meaning and scope when different words or phrases are used in separate claims. To the extent that the absence of such difference in meaning and scope would make a claim superfluous, the doctrine of claim differentiation states the presumption that the difference between claims is significant.").   By directing *both* claim 41 *and* claim 25 to "[a]n apparatus comprising," and by repeatedly reciting "means for" *only in claim 41*, only claim 41 should be construed as invoking Section 112, ¶ 6.   To hold otherwise would violate the doctrine of claim differentiation by impermissibly conflating into one at least the distinct scopes of independent claims 25 and 41.

Fourth, Google overlooks claim terms that connote structure to a person of ordinary skill in the art.   The Federal Circuit reasoning in *Zeroclick, LLC v. Apple Inc.*, 891 F. 3d 1003, 1007–09, (Fed. Cir. 2018) is instructive on this point. The Circuit found the district court "legally erred by not giving effect to the unrebutted presumption against the application of § 112, ¶ 6," and that the district court's analysis was "couched in conclusory language" in concluding that "program" and "user interface code" were nonce words.   Under *Zeroclick*, therefore, the words "program" and "code" are not properly considered *per se* nonce words in the context of the computing arts.

Here, the claim language at issue is not purely functional, but rather recites specific structure that can perform respective tasks set forth in the body the claims. *See Crossroads Sys., (Texas), Inc. v. Chaparral Network Storage, Inc.*, No. A 00 CA 217 SS, 2000 WL 35731852, at *4 (W.D. Tex. July 27, 2000) ("From a review of the claim language as a whole, the Court agrees with the plaintiff that the term 'supervisor unit' is not purely functional, but refers instead to a device that can perform the tasks specifically listed in the claim language of the ′972 patent."); *see also Collaborative Agreements, LLC v. Adobe Systems Inc.*, Case No. A–14–CV–356–LY, 2015 WL 2250391, *12–*14 (W.D. Tex. 2015), *denying reconsideration after transfer*, Case No. 15-cv-03853-EMC, 2015 WL 7753293, *4–*8 (N.D. Cal. Dec. 2, 2015) (finding "code-segment" had sufficient structure to avoid being treated as a means-plus-function limitation). Claim 13, for example, is directed to "[a] *computer program product* comprising at least one *computer-readable storage medium* having computer-readable *program code* portions stored therein, the computer-readable program code portions comprising" executable portions for performing the tasks recited. Claim 25 similarly recites structural limitations as "[a]n *apparatus* comprising a *processor* and *memory* including *computer program code*, the *memory and the computer program code configured to, with the processor*, cause the *apparatus* at least to" perform certain tasks, which collectively further expressly limit this preamble structure. *Id*.

Fifth, Google's untethered interpretation (that the challenged claim language invokes Section 112, ¶ 6 and fails to recite *any* structure) effectively seeks to undue decades of recognized patent law concerning *Beauregard* claims. *In re Beauregard*, 53 F.3d 1583 (Fed. Cir. 1995). United States patent law has long recognized a *Beauregard* claim as a patentable form of claiming a computer program, where the claim is directed to an article of manufacture—*e.g.*, a computer-readable medium on which are encoded, typically, instructions for carrying out a process. *Id*.

8

Here, the preamble of claim 13, for example, recites "*[a] computer program product* comprising at least one *computer-readable storage medium* having *computer-readable program code portions* stored therein, the computer-readable program code portions comprising[.]" The preamble is followed in the body of claim 13 by a listing of executable "program code" portions (which itself connotes structure). Google's attempt to recast claim 13 as somehow invoking Section 112, ¶ 6 is a radical departure of established law, including authority of this district. For example, the Court found that "computer readable medium" was an article of manufacture and not a means-plus-function limitation. *Collaborative Agreements,* 2015 WL 2250391, *12–*14. The Court also observed (in that same opinion) that "systems claims [which] are essentially a method carried out on an apparatus by a computer-implemented software code contained on a storage device[,] as in the code-segment claims[,] [employ] a standard claiming technique that has been repeatedly upheld as definite." *Id.* (collecting cases).

Accordingly, each principle or presumption of claim construction addressed above independently weighs against Google's untenable position—collectively they bury it. The identified claim language from the preambles of claims 13 and 25 require no construction here, apart from the Court rejecting Google's untenable positions.

   **C. Google has not and cannot meet its burden to overcome the presumption of definiteness for the "means for" terms recited only in claim 41 of the '491 patent.**

   **6. "means for processing an input image for an attempt to decode the input image using a current barcode reading method, the processing including performing a correction on the input image" (claim 41)**

| WSOU's Position | Google's Position |
|---|---|
| This term is subject to means-plus-function treatment under 35 U.S.C. § 112, ¶ 6. | This term is subject to means-plus-function treatment under 35 U.S.C. § 112, ¶ 6. |
| **Function**: "processing an input image for an attempt to decode the input image using a current barcode reading method" | **Function**: "processing an input image for an attempt to decode the input image using a current barcode reading method, the |

9

| | |
|---|---|
| **Structure**: Fig. 3, barcode reading element 70 and processing element 72; Fig. 6, block 200; Fig. 7–8; 2:25–3:34; 5:35–57; 8:26–16:52; 17:8–53; 19:31–60; 20:37–52; 21:38–42; 24:13–14; and equivalents thereof.[1] | processing including performing a correction on the input image" <br><br> **Structure**: 9:58 to 11:23, 15:25 to 16:52. |

The parties agree that the "means for processing …" term (recited only in claim 41) is subject to means-plus-function treatment under 35 U.S.C. § 112, ¶ 6, and is not indefinite.  The parties also appear to agree that the recited function for this "means for" term includes "processing an input image for an attempt to decode the input image using a current barcode reading method."  While WSOU had initially agreed with Google that the entirety of the term appearing after "means for" should be considered functional language, upon further scrutiny, the clause "the processing including performing a correction on the input image" (which is highlighted in the table able, in the cell expressing Google's Position) should be interpreted as reciting corresponding algorithmic structure because it expressly modifies the "means for processing …" (i.e., "the processing including") and it structurally limits *how* that "processing" must be effected (i.e., by "performing a correction on the input image").

As shown in the table above, there is at least some overlap in the parties' respective identification of corresponding structure for the "means for processing …" term.  Specifically, the parties appear to at least agree that the '491 patent discloses corresponding structure for this term at least within column 9, line 58 to column 11, line 23, and also within column 15, line 25 to column 16, line 52.  Certain exemplary disclosure identified by both parties describe corresponding structure (including algorithmic structure) in the form of example operations performed by certain

---

[1] In identifying exemplary structure corresponding to claimed functionality, citations in the instant brief to the figures and certain referenced features thereof are intended to include corresponding disclosure in the written description, and *vice versa*.

exemplary component(s) (*e.g.*, the barcode reading element 70 and processing element 72 of Figure 3). In certain disclosed embodiments, for example, structure corresponding to the claimed "means for processing …" is described at least in the following contexts: obtaining an input image (*e.g.*, 9:58–59, 18:14; Fig. 8, operation 400); determining a region of interest ("ROI") (*e.g.*, 9:39–40; 10:7–8; Fig. 7, block 302; Fig. 8, operation 404); performing binarization, if certain conditions apply (*e.g.*, if the input image is two-dimensional and not binary) (*e.g.*, 9:47–49; 18:37–46; Fig. 7 operation 310; Fig. 8, operation 402); and performing a correction (*e.g.*, 15:25 to 16:52; Fig. 7, operation 312; Fig. 8, operation 412).

7.   **"means for determining whether the processing of the input image is successful based on a determination as to whether the correction is completed" (claim 41)**

| WSOU's Position | Google's Position |
|---|---|
| This term is subject to means-plus-function treatment under 35 U.S.C. § 112, ¶ 6. | This term is subject to means-plus-function treatment under 35 U.S.C. § 112, ¶ 6 and is indefinite. |
| **Function**: "determining whether the processing of the input image is successful based on a determination as to whether the correction is completed" | **Function**: "determining whether the processing of the input image is successful based on a determination as to whether the correction is completed" |
| **Structure**: Fig 3, processing element 72; Fig. 6, operations 210–230; 2:25–3:34; 16:65–17:7; 17:8–53 18:48-60; 19:21–26; 24:16–17; and equivalents thereof. | **Structure**: None |

The parties agree that the "means for determining …" term (recited only in claim 41) is subject to means-plus-function treatment under 35 U.S.C. § 112, ¶ 6, and that the function at least includes "determining whether the processing of the input image is successful based on a determination as to whether the correction is completed." While WSOU had initially agreed with Google that the entirety of the term appearing after "means for" should be considered functional language, upon further scrutiny, the clause "based on a determination as to whether the correction is completed" should be interpreted as corresponding structure. This is because the "based on …"

11

clause recites algorithmic structure that expressly limits *how* the "means for determining whether the processing of the input image is successful" must be effected.

Google makes no distinction in purporting to raise the same conclusory indefiniteness challenge to all "means for" terms recited in claim 41.  580-GIC, 14.  As with the other "means for" terms, Google objects to the definiteness of the "means for determining …" term as allegedly failing "to disclose and clearly link or associate *any* adequate structure for performing these recited functions."  *Id.* (emphasis added).  Google failed, however, to provide any notice apart from raising the conclusory objection itself.  *Id.*  Google's insufficient notice prejudices WSOU's ability to respond in the instant brief.  That Google has since abandoned its indefiniteness objection to the "means for processing" term underscores the weakness of its indiscriminate and conclusory indefinite position.

WSOU has identified in the table above citations to the '491 patent addressing exemplary structure corresponding to the "means for determining …" term.  For example, in certain disclosed embodiments, structure corresponding to the claimed "means for determining …" is described with reference to at least processing element 72 and, further, in at least the following exemplary contexts: determining whether the correction is completed (*e.g.*, 18:48–52; 19:21–26); and, based at least on the determination that the correction is completed, determining whether the processing of the input image is successful (*e.g.*, 18:52–60; Fig. 6, operation 210).

8. **"means for switching to one of a different barcode reading method or processing a new frame of the input image using the current barcode reading method in response to the processing of the input image being unsuccessful" (claim 41)**

| WSOU's Position | Google's Position |
| --- | --- |
| This term is subject to means-plus-function treatment under 35 U.S.C. § 112, ¶ 6.<br><br>**Function**: "switching to one of a different | This term is subject to means-plus-function treatment under 35 U.S.C. § 112, ¶ 6 and is indefinite. |

| | |
|---|---|
| barcode reading method or processing a new frame of the input image using the current barcode reading method in response to the processing of the input image being unsuccessful" | **Function**: "switching to one of a different barcode reading method or processing a new frame of the input image using the current barcode reading method in response to the processing of the input image being unsuccessful" |
| **Structure**: Fig. 3, processing element 72; Fig. 6–8, blocks 260 and 270; 2:25–3:34; 14:3–12; 16:53–17:53; 18:48–52; 19:21–60; 20:53–56; 21:3–5; and equivalents thereof. | **Structure**: None |

The parties agree that the "means for switching …" term (recited only in claim 41) is subject to means-plus-function treatment under 35 U.S.C. § 112, ¶ 6, and that the function is recited as "switching to one of a different barcode reading method or processing a new frame of the input image using the current barcode reading method in response to the processing of the input image being unsuccessful."

Google makes no distinction in purporting to raise the same conclusory indefiniteness challenge to all "means for" terms recited in claim 41. 580-GIC, 14. As with the other "means for" terms, Google objects to the definiteness of the "means for switching …" term as allegedly failing "to disclose and clearly link or associate *any* adequate structure for performing these recited functions." *Id*. (emphasis added). Google failed, however, to provide any notice apart from raising the conclusory objection itself. *Id*. Google's insufficient notice prejudices WSOU's ability to respond in the instant brief. That Google has since abandoned its indefiniteness objection to the "means for processing" term underscores the weakness of its indiscriminate and conclusory indefinite position.

WSOU has identified in the table above citations to the '491 patent addressing exemplary structure corresponding to the "means for switching …" term. For example, in certain disclosed embodiments, structure corresponding to the claimed "means for switching …" is described at least with reference to processing element 72 and, further, in at least the following exemplary

contexts: determining an attempt to detect a barcode is unsuccessful (*e.g.*, 14:3–12); modifying the current barcode reading method by switching from a global binarization to an adaptive binarization (*e.g.*, 14:3–12); in response to determining a new frame is available, restarting ROI correction using the new frame and the same ROI under the current barcode reading method (*e.g.*, 17:55–58; 18:48–52; 19:23–25).

9. **"means for attempting a decode of the input image using the current barcode reading method in response to the processing of the input image being successful" (claim 41)**

| WSOU's Position | Google's Position |
| --- | --- |
| This term is subject to means-plus-function treatment under 35 U.S.C. § 112, ¶ 6.<br><br>**Function**: "attempting a decode of the input image using the current barcode reading method in response to the processing of the input image being successful"<br><br>**Structure**: Fig. 3, barcode reading element 70 and processing element 72; Fig. 6, block 220; Figs. 7–8; 2:25–3:34; 9:45–47; 13:33–62; 17:8–53; 18:26–62; 19:31–60; and equivalents thereof. | This term is subject to means-plus-function treatment under 35 U.S.C. § 112, ¶ 6 and is indefinite.<br><br>**Function**: "attempting a decode of the input image using the current barcode reading method in response to the processing of the input image being successful"<br><br>**Structure**: None |

The parties agree that the "means for attempting …" term (recited only in claim 41) is subject to means-plus-function treatment under 35 U.S.C. § 112, ¶ 6 and that the function is recited as "attempting a decode of the input image using the current barcode reading method in response to the processing of the input image being successful."

Google makes no distinction in purporting to raise the same conclusory indefiniteness challenge to all "means for" terms recited in claim 41. 580-GIC, 14. As with the other "means for" terms, Google objects to the definiteness of the "means for attempting …" term as allegedly failing "to disclose and clearly link or associate *any* adequate structure for performing these recited functions." *Id.* (emphasis added). Google failed, however, to provide any notice apart from raising

the conclusory objection itself.  *Id.*  Google's insufficient notice prejudices WSOU's ability to respond in the instant brief.  That Google has since abandoned its indefiniteness objection to the "means for processing" term underscores the weakness of its indiscriminate and conclusory indefinite position.

WSOU has identified in the table above citations to the '491 patent addressing exemplary structure corresponding to the "means for attempting …" term.  For example, in certain disclosed embodiments, structure corresponding to the claimed "means for attempting a decode …" is described at least in the following contexts: based at least on a characteristic of the ROI, determining whether a barcode is one-dimensional ("1D") or two-dimensional ("2D") (*e.g.*, Fig. 7, operation 304; Fig. 8, operation 406; 9:45–47; 18:23–26; 19:8–10); determining a barcode type (*e.g.*, Fig. 7, operation 306; Fig. 8, operations 408 and 416; 13:33–62; 18:26–27); attempting a decode of the barcode in accordance with its determined characteristic(s) (*e.g.*, Fig. 7, operation 306; Fig. 8, operations 408 and 420; 18:26–27).

### 10. "means for performing a switch to the different barcode reading method in response to a failure of the attempt to decode the input image using the current barcode reading method" (claim 41)

| WSOU's Position | Google's Position |
| --- | --- |
| This term is subject to means-plus-function treatment under 35 U.S.C. § 112, ¶ 6. | This term is subject to means-plus-function treatment under 35 U.S.C. § 112, ¶ 6 and is indefinite. |
| **Function**: "performing a switch to the different barcode reading method in response to a failure of the attempt to decode the input image using the current barcode reading method" | **Function**: "performing a switch to the different barcode reading method in response to a failure of the attempt to decode the input image using the current barcode reading method" |
| **Structure**: Fig. 3, barcode reading element 70 and processing element 72; Fig. 6, operations 230 and 270; Figs. 7–8; 2:25–3:34; 5:35–57; 8:26–16:6; 16:61–18:10; 18:48–52; 19:31–60; 20:37–52; 21:38–42; and equivalents thereof. | **Structure**: None |

15

The parties agree that the "means for performing …" term (recited only in claim 41) is subject to means-plus-function treatment under 35 U.S.C. § 112, ¶ 6, and that the function is recited as "performing a switch to the different barcode reading method in response to a failure of the attempt to decode the input image using the current barcode reading method."

Google makes no distinction in purporting to raise the same conclusory indefiniteness challenge to all "means for" terms recited in claim 41. 580-GIC, 14. As with the other "means for" terms, Google objects to the definiteness of the "means for performing …" term as allegedly failing "to disclose and clearly link or associate *any* adequate structure for performing these recited functions." *Id*. (emphasis added). Google failed, however, to provide any notice apart from raising the conclusory objection itself. *Id*. Google's insufficient notice prejudices WSOU's ability to respond in the instant brief. That Google has since abandoned its indefiniteness objection to the "means for processing" term underscores the weakness of its indiscriminate and conclusory indefinite position.

WSOU has identified in the table above citations to the '491 patent addressing exemplary structure corresponding to the "means for performing …" term. For example, in certain disclosed embodiments, structure corresponding to the claimed "means for performing …" is described with reference to barcode reading element 70 and processing element 72 and, further, in at least in the following exemplary contexts: determining a failure of the attempt to decode the input image using the current barcode reading (*e.g.*, 16:61–17:1; 17:60–62; Fig. 6, operation 230); and, in response to determining a failure of the attempt to decode the input image using the current barcode reading method, switching from the current barcode reading method to the different barcode reading method (*e.g.*, 17:1–17:7, 17:63–18:10; Fig. 6, operation 270; Fig. 8).

**III.    U.S. Patent No. 8,595,283 (Case No. 6:20-cv-00576-ADA)**

**A.  Disputed terms of the '283 patent which only Google seeks to construe.**

1. **"a content transfer controller configured to determine an acceptable activity period by monitoring usage of the one or more components over a particular time duration, and wherein the content transfer controller is configured to determine that an acceptable activity period is present when the usage of the one or more components is determined to have been below a particular threshold level over the particular time duration"**

| WSOU's Proposed Construction | Google's Proposed Construction |
|---|---|
| Plain and ordinary meaning. | This term is subject to means-plus-function treatment under 35 U.S.C. § 112, ¶ 6. <br><br> **Function**: "determine an acceptable activity period by monitoring usage of the one or more components over a particular time duration, and determine that an acceptable activity period is present when the usage of the one or more components is determined to have been below a particular threshold level over the particular time duration" <br><br> **Structure**: none (indefinite) |

The disputed phrase introduced (in claim 1 only) as "a content transfer …" requires no construction and should be afforded its plain and ordinary meaning.  Because the phrase does not recite the words "means," mean-plus-function construction under Section 112, ¶ 6, presumptively does not apply. *Williamson,* 792 F.3d at 1348.  That presumption can only be overcome "if the challenger demonstrates that the claim term fails to 'recite sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'" *Id*. at 1349. Resolving whether the term "a content transfer controller" invokes Section 112, ¶ 6, depends on whether persons skilled in the art would understand the claim language to refer to structure, assessed in light of the presumption that flows from the drafter's choice not to use the word "means." *Samsung Elecs. Am. v. Prisua Eng'g Corp*., 948 F.3d 1342, 1354 (Fed. Cir. 2020); *Skky,*

*Inc. v. MindGeek, s.a.r.l.*, 859 F.3d 1014, 1019 (Fed. Cir. 2017) ("To determine whether a claim recites sufficient structure, 'it is sufficient if the claim term is used in common parlance or by persons of skill in the pertinent art to designate structure, even if the term covers a broad class of structures and even if the term identifies the structures by their function.'"). The presumption stands here.

A person of skill in the art would understand the claim language to refer to structure, particularly by its recitation of "a content transfer controller configured to …" perform certain tasks. The Eastern District of Texas, when considering claim language also directed to "controller" structure, correctly found the word "controller" itself connotes structure in the computing arts and thus is not subject to means-plus-function construction under Section 112, ¶ 6. *See*, *e.g.*, *Virginia Innovation Sciences, Inc. v. Amazon.com, Inc.*, Case No. 4:18-cv-475, 2019 WL 4259020, *14 (E.D. Tex. Sept. 9, 2019) (term "central controller" was not a nonce word but connoted specific structure to avoid means-plus-function treatment since the modifier "central" did not alter the well-known meaning of "controller"); *Barkan Wireless IP Holdings, L.P. v. Samsung Electronics Co., Ltd.*, Case No. 2:18-CV-28-JRG, 2019 WL 497902, *22–*23 (E.D. Tex. Feb. 7, 2019) (term "controller" in limitation "a controller adapted to regulate data flow between the mobile device and the data network" was not a means-plus-function limitation where nothing in the specification suggests that "controller" lacks structure).

While the presumption stands unrebutted that Section 112, ¶ 6, does not apply to the claim language in question, Google is also wrong in arguing the specification lacks any written description of corresponding structure. For example, the specification provides certain exemplary embodiments where the content transfer controller may be "controller 21 of the content receptor device" ('283 patent, 9:50–52), and controller 21 is labeled "CPU" in Figure 1 (*Id.*, Fig. 1). *See*

*also id.* 6:12–24 ("the content receptor device 20 includes controller 21 which co-ordinates and controls the operation of the other elements of the content receptor device 20…"); *id.*, 10:10–11 ("The content control means, such as processor 21").  The specification further discloses, for example, various embodiments in which "controller 21" is the content transfer controller and determines an acceptable activity period by monitoring usage of the one or more components over a particular time duration, and wherein the content transfer controller is configured to determine that an acceptable activity period is present when the usage of the one or more components is determined to have been below a particular threshold level over the particular time duration. *See, e.g.*, *id.*, 7:48–8:17, 9:24–10:56.

2. **"the content transfer controller being arranged: to initiate transfer of the selected item of content from a content provider device according to the determination of an acceptable activity period, to receive the selected item of content, and to store the received item of content on memory"**

| WSOU's Proposed Construction | Google's Proposed Construction |
|---|---|
| Plain and ordinary meaning. | This term is subject to means-plus-function treatment under 35 U.S.C. § 112, ¶ 6.<br><br>**Function**: "initiate transfer of the selected item of content from a content provider device according to the determination of an acceptable activity period, receive the selected item of content, and store the received item of content on memory"<br><br>**Structure**: none (indefinite) |

Because the phrase introduced (only in claim 1) as "the content transfer …" does not contain the words "means," mean-plus-function construction under Section 112, ¶ 6, presumptively does not apply.  *Williamson*, 792 F.3d at 1348.  The disputed phrase requires no construction and should be afforded its plain and ordinary meaning, for the same reasons as the other "content transfer controller" term, discussed above.

19

Google not only errs in interpreting the claim language as invoking means-plus-function construction, Google also is wrong in asserting that the specification lacks any written description of corresponding structure.   For example, the specification provides certain exemplary embodiments where the content transfer controller may be "controller 21 of the content receptor device" ('283 patent, 9:50–52), and controller 21 is labeled "CPU" in Figure 1 (*Id.*, Fig. 1). *See also Id.* 6:12–24 ("the content receptor device 20 includes controller 21 which co-ordinates and controls the operation of the other elements of the content receptor device 20…"); *Id.*, 10:10–11 ("The content control means, such as processor 21").   The specification further discloses, for example, various embodiments in which "controller 21" is the content transfer controller which initiates transfer of the selected item of content from a content provider device according to the determination of an acceptable activity period, to receive the selected item of content, and to store the received item of content on memory. '283 patent, 8:13–28, 10:10–11:11.

### 3.   "the selected item of content"

| WSOU's Proposed Construction | Google's Proposed Construction |
| --- | --- |
| Plain and ordinary meaning. | "the item of content selected for transfer by the user via the user interface" |

The phrase "the selected item of content" (recited in all independent claims 1, 10, 11, and 21) requires no construction.   As recited in claim 1, the phrase derives its antecedent basis from the recitation, "allow[ing] a user to select an item of content." *See* '283 patent, 15:59–60 (claim 1); *see also* 16:45–46 (claim 10), 18:16–17 (claim 21).   At best, Google's proposed construction would render superfluous already existing claim language.   This is disfavored.  *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1410 (Fed. Cir. 2004) ("interpretations that render some portion of the claim language superfluous are disfavored.").

### 4. "an acceptable level of device activity"

| WSOU's Proposed Construction | Google's Proposed Construction |
|---|---|
| Plain and ordinary meaning. | Indefinite |

The phrase "an acceptable level of activity" (recited in claims 7−10, 14−16, and 21) be given its plain and ordinary meaning.  The specification teaches that "device activity" may be determined between different threshold levels, such as high, moderate, low, or some or no level of device activity. '283 patent, 1:53–56. It also teaches that periods of low device activity are considered to be acceptable, though the user is allowed to program and re-program different times when the transfer of content is convenient. *Id.*, 2:22–28. Further, the specification teaches that low (acceptable) activity periods may be determined by analyzing the passing of time and pre-determine particular times of low-activity (*Id.*, 2:15–24), or low (acceptable) activity periods may be determined by monitoring the usage of one or more of the device components, such as a processor or transmission component, and to consider that a low activity period has occurred when component usage is below a particular threshold or when there has been no usage at all over a particular time period. *Id.*, 2:29–45. Moreover, the specification also teaches predicting times for future acceptable activity levels by analyzing changes in the activity levels over a time duration such as hour/day/week and learning from historical activity levels.  *Id.*, 2:46–58.

### 5. "monitoring usage of one or more components … over a particular time duration"

| WSOU's Proposed Construction | Google's Proposed Construction |
|---|---|
| Plain and ordinary meaning. | "monitoring the use of one or more components . . . throughout a limited, non-instantaneous period of time" |

The disputed "monitoring …" term (recited only in claim 10) requires no construction. Google's proposed construction is vague and unhelpful; and it should be rejected for improperly importing limitations not required in the claims or specification. *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1369 (Fed. Cir. 2012) ("Absent disclaimer or lexicography, the plain meaning of the claim controls."). It is unclear the effect of the limitations of "limited" and "non-instantaneous" in Google's proposed construction. The Court should reject Google's attempt to redraft the claim language, particularly in a manner that would only introduce ambiguity.

## IV.    U.S. Patent No. 8,640,180 (Case No. 6:20-cv-00579-ADA)

### A.  Disputed terms of the '180 patent which only Google seeks to construe.

#### 1.  "client-side compositing of media streams"

| WSOU's Position | Google's Position |
|---|---|
| Plain and ordinary meaning. | The preamble is limiting |

The sole dispute injected by Google over the phrase "client-side compositing of media streams" (recited only in the respective *preambles* of the independent claims) is whether that particular *preamble* phrase imposes a limitation on the claims.[2]  It does not.

As this Court correctly stated, "Courts presume that the preamble does not limit the claims." *Ancora Techs., Inc. v. LG Elecs. Inc.*, Case No. 1-20-CV-00034-ADA, 2020 WL 4825716, at *6 (W.D. Tex. Aug. 19, 2020) (citing *Am. Med. Sys., Inc. v. Biolitec, Inc.*, 618 F.3d

---

[2] While Google stylizes its position regarding "client-side compositing of media steams" as "the preamble is limiting," the parties agreed to limit this dispute solely to whether the preamble phrase "client-side compositing of media streams" imposes a limitation.  Courts appropriately parse claim preambles into terms or phrases to independently determine whether each imposes a limitation. *See Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 320 F.3d 1339, 1345 (Fed. Cir. 2003) (separately analyzing "growing" and "isolating" terms recited in the same preamble). Accordingly, this brief addresses the one and only narrowed preamble issue which Google chose to preserve—namely, whether "client-side compositing of media streams" imposes a limitation.

1354, 1358 (Fed. Cir. 2010)); *see also Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1236 (Fed. Cir. 2017) ("Generally, the preamble does not limit the claims.") (citations omitted). The Federal Circuit has further instructed that "a preamble is not limiting 'where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention.'" *Shoes by Firebug LLC v. Stride Rite Children's Grp.*, *LLC*, 962 F.3d 1362, 1367 (Fed. Cir. 2020) (citation and internal quotations omitted). Application of this authority here confirms that the preamble phrase "client-side compositing of media streams" does not impose a limitation on the claims.

None of the words in the sole disputed preamble phrase ("client-side compositing of media streams") provide antecedent basis for *any* term recited in the body of *any* of the independent claims. Moreover, the first limitation of each independent claim uses the article "a" to introduce either the term "a multiplexed data *stream*" or the term "a compositing-instruction *substream*." The preamble recitation of "client-side compositing of media streams" cannot be said to provide essential structure or necessary meaning to the claimed invention where the terms "stream" or "substeam" are independently recited in the body of each claim. *Id*. 1367–68. ("The preamble, then, cannot be said to provide essential structure or necessary meaning to the claimed invention because the same element—the footwear—is independently recited in the body of the claim.").

When understood in context, the preamble phrase "client-side compositing of media streams" merely expresses a purpose or intended use for the invention, and hence is not limiting. The various independent terms recite the disputed preamble phrase in method claims as "[a] method for *client-side compositing of media streams* by [certain structure]," or, in apparatus claims as "[certain structure] for *client-side composition of media streams*." The Court's reasoning in *Ancora Techs.* is instructive here.  2020 WL 4825716, at *7. The Court discussed a relevant ruling

23

in *TomTom, Inc. v. Adolph*, 790 F.3d 1315, 1322–23 (Fed. Cir. 2015) as follows:

> [In *TomTom*], [t]he Federal Circuit found the intended-use portion of a preamble to be non-limiting and therefore not requiring construction, even though the phrase following the intended-use portion was limiting. *Id*. The Federal Circuit found that the portion was merely "language stating a purpose or intended use and employs the standard pattern of such language: the words 'a method for a purpose or intended use comprising,' followed by the body of the claim, in which the claim limitations describing the invention are recited." *Id*. at 1324. The structure of the preamble in this case is highly similar to that in TomTom, and the Court finds no reason to stray away from that precedent.

*Ancora Techs.*, 2020 WL 4825716, at *7 (W.D. Tex. Aug. 19, 2020).  Here, the structure of the preamble invokes *TomTom* for analogous reasons.

It is curious that Google opted to not preserve the right to argue for a particular construction for the disputed preamble phrase, *if* it is deemed limiting.  Nor has Google explained how a finding that the disputed preamble phrase is limited would affect claim scope, if at all.  It would be erroneous, for example, to conclude that each claim of the '180 patent requires client-side compositing operations for a media stream, regardless of whether any such operations are recited in the body of the claim.  Such an untethered interpretation cannot withstand scrutiny in view of the claim language.  Independent claim 7, for example, recites "by the video server" following each one of its operative gerunds (i.e., "generating, by the video server," "multiplexing, by the video server," and "transmitting, by the video server").  Claim 1, by contrast, recites "by the video display device" following each one of its operative gerunds (i.e., "receiving, by the video display device," "demultiplexing, by the video display device," and "displaying, by the video display device").  The distinct perspectives recited in method claims 1 and 7 reveals that the claim bodies independently attribute claim limitations to specific elements when it is required.  That claims 1

and 7 have distinct perspectives, yet both recite "client-side compositing of media streams" in their respective preambles, also underscores that this preamble phrase does not itself impose a claim limitation.  Rather, it plainly expresses a purpose or intended use—and hence it is not limiting.

2. **"wherein the compositing-instruction substream indicating the area of the display screen to display the at least one media substream is an area to display one of the on screen display and a picture-in-picture"**

| WSOU's Position | Google's Position |
|---|---|
| Plain and ordinary meaning; definite. | Indefinite. |

Google has not disclosed a sufficient basis to rebut the presumption of definiteness that attaches to the phrase "wherein the compositing-instruction substream indicating the area of the display screen to display the at least one media substream is an area to display one of the on screen display and a picture-in-picture" (as recited in claims 8 and 21 only).  Google purports to raise an indefiniteness objection to the disputed phrase as follows:

> The claim term "the area of the display screen" in dependent claims 8 and 21 refers to the claim limitation "an area of a display screen" recited in claims 7 and 21, respectively.  Claims 7 and 20 require that this "area of the display screen" be used to place "an on screen display." But dependent claims 8 and 21 require that "the area of the display screen" instead be used to display "one of the on-screen display and a picture-in-picture." On their face, these claims are not susceptible to reasonable ascertainment because it is unclear how "an area of the display screen" can be required to display "an on screen display," as recited in independent claims 7 and 20, and also be required to display "one of the on-screen display and a picture-in-picture," as required by dependent claims 8 and 21.

Google's Invalidity Contentions dated Dec. 4, 2020 ("579-GIC"), 10.

Google improperly attempts to inject ambiguity (into a sufficiently definite term) by offering a contrived assessment of the claim language.  None of the identified claims (7, 8, 20 and

21) affirmatively require actual *use* of a display screen.  *Cf. id.*  ("Claims 7 and 20 require that this 'area of the display screen' be used to place 'an on screen display.'"); *id.* (erroneously characterizes claim 7 and 20 as requiring "'an area of the display screen" … to display 'an on screen display.'").  The relevant portion of claim 7 is directed to "one or more of *instructions* indicating [1] an aspect ratio of at least one media substream and [2] an area of a display screen to place an on screen display included in an on screen display substream."   Here, claim 7 plainly qualifies the "instructions" as "indicating" "one or more" of two recited *options*: (1) "an aspect ratio of at least one media substream" and (2) "an area of a display screen to place an on screen display included in an on screen display substream."   Claim 8 *further limits* the "instructions" of claim 7 as *necessarily* indicating that "the area of the display screen . . . is an area to display one of the on-screen display and a picture-in-picture."   Google's suggestion that claim 8 recites an impossibility in view of claim 7, or does not further limit claim 7, is simply untethered to what the claim language expressly requires.   Claims 7 and 21 recite respective analogous limitations and the presumption of definiteness stands unrebutted for analogous reasons.

## V.      U.S. Patent No. 8,965,045 (Case No. 6:20-cv-00574-ADA)

### A.  Disputed terms of the '045 patent which only Google seeks to construe.

#### 1.   "a pre-emptive user output"

| WSOU's Position | Google's Position |
|---|---|
| Plain and ordinary meaning. | "an output that facilitates a user action to redefine available pixels before the tracked object is lost" |

The phrase "a pre-emptive user output" requires no construction, particularly in view of the contexts in which it is recited (in claims 1, 18, and 21).   Google errs in seeking to unduly restrict this phrase as requiring "an output that facilitates a user action to redefine available pixels before the tracked object is lost."   Google again violates fundamental principles of claim

26

construction.

First, Google's construction violates the doctrine of claim differentiation.  In addition to the relevant authority cited above, the Federal Circuit has explained the practical import of the doctrine, at one level, as a further prohibition on reading limitations from a dependent claim into its independent claim.  *Karlin Technology, Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 971–72 (Fed. Cir. 1999) ("The doctrine [of claim differentiation] . . . normally means that limitations stated in dependent claims are not to be read into the independent claim form which they depend.") *accord SunRace Roots Enterprise Co., Ltd. v. SRAM Corp.*, 336 F.3d 1298, 1302–03 (Fed. Cir. 2003) (instructing that the doctrine of claim differentiation "create[s] a presumption that each claim in a patent has a different scope" and "[t]hat presumption *is especially strong* when the limitation in dispute is the only meaningful difference between an independent and dependent claim, and one party is urging that the limitation in the dependent claim should be read into the independent claim.") (emphasis added).

Claim 18 recites the disputed term in the following context: "in response to detecting the sub-set of pixels approaching an edge of the set of available pixels, providing *a pre-emptive user output*."  Claim 19 further limits claim 18 by reciting, "[a] method as claimed in claim 18, wherein the user output facilitates use[r] action that redefines the set of available pixels."  While Google's proposed construction slightly differs from claim 18, it tracks closely enough to risk incorporating limitations from a dependent claim into an independent claim.  Such incorporation is contrary to the "especially strong" presumption arising under the doctrine of claim differentiation.  *SunRace*, 336 F.3d at 1302–03.

Second, Google compounds its error in seeking to add extraneous limitations, such as "*before* the tracked object *is lost*."  As discussed above, it is impermissible to add limitations neither

27

required by claim terms nor unambiguously required by either the specification or the prosecution history. *See*, *e.g.*, *Cont'l Circuits,* 915 F.3d at 796–97; *Dayco*, 258 F.3d at 1327. No such condition exists here. Google's impermissible rewrite also should be rejected in view of the surrounding context of claim 1, for example. Claim 1 recites "a pre-emptive user output when the sub-set of pixels approaches an edge of the set of available pixels," and thus it already specifies "when" the "pre-emptive user output" is to be provided. Google impermissibly seeks to rewrite this claim language as, instead, having a temporal requirement ("before") that is relative to an unrecited event ("the tracked object is lost") which may never actually occur.

Third, Google commits the "cardinal sin" of importing limitations from exemplary disclosure in the specification into the claims. *Phillips*, 415 F.3d at 1319–1320 ("One of the cardinal sins of patent law [is] reading a limitation from the written description into the claims.") (quoting *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1340 (Fed. Cir. 2001)). The phrase "is lost" appears only once in the '045 patent, at the end of the paragraph reproduced below:

> Next, at block 122 the processor 4 provides a pre-emptive user output 110. This user output 110 facilitates user action that redefines the set of available pixels 100 pre-emptively, that is, before tracking of the object 30 *is lost*.

'045 patent, 12:45–48 (emphasis added). The grammatical context of the passage cited above refutes Google's construction. The written description uses the word "pre-emptively" in the passage above as an adverb that modifies "redefines." *Id*. The meaning would not be changed if the statement had been written as "… facilitates user action that *pre-emptively redefines* the set of available pixels 100, that is, before tracking of the object is lost." It follows that the explanatory statement, "before tracking of the object is lost" is, at most, a clarification of what *pre-emptively redefine* means, in the context of that particular embodiment. *Id*. It is not offered

as a lexicographic requirement for all instances of the "pre-emptive user output" term itself.  That the above statement from the specification is merely exemplary, and not unambiguously required in all instances, is further confirmed by claim 19.  As discussed above, claim 19 recites similar (though not identical) language to Google's proposed construction in setting forth *additional* limitations which *narrow* claim scope with respect to claim 18.  The intrinsic evidence reveals, therefore, that Google commits the "cardinal sin" in seeking to import as limitations *into independent claim 18* statements in the specification which, at most, merely clarify claim language *recited in dependent claim 19*.  *Phillips*, 415 F.3d at 1319–1320.

Accordingly, for a myriad of independent reasons, the Court should reject Google's attempt to redraft the term "a pre-emptive user output" as impermissibly violating fundamental principles of claim construction.

### 2. "said processor configured to provide a pre-emptive user output when the sub-set of pixels approaches an edge of the set of available pixels"

| WSOU's Position | Google's Position |
|---|---|
| Plain and ordinary meaning; does not invoke 35 U.S.C. § 112, ¶ 6; definite. | This term is subject to means-plus-function treatment under 35 U.S.C. § 112, ¶ 6.<br><br>**Function**: provide a pre-emptive user output when the sub-set of pixels approaches an edge of the set of available pixels.<br><br>**Structure**: none (indefinite). |

For the phrase, "said processor configured to provide a pre-emptive user output when the sub-set of pixels approaches an edge of the set of available pixels" (recited only in claim 1), Google commits compounded error in arguing (1) the phrase invokes 35 U.S.C. § 112, ¶ 6 and (2) is allegedly indefinite as failing to recite any corresponding structure.  The burden lies with Google to establish both points, and Google is wrong on each.

29

In reciting "*said* processor …," the disputed phrase makes reference to the antecedent recitation, "*a processor* configured to move automatically a sub-set of pixels defining a target captured image that corresponds to the first picture, within a larger set of available pixels in a direction of an edge of the target captured image when a defined area of interest within the target captured image approaches the edge of the target captured image[.]"  It is significant here that Google does <u>not</u> seek to construe this antecedent phrase as being subject to means-plus-function treatment under Section 112, ¶ 6.  The phrase "*said* processor configured to …" cannot be interpreted as invoking Section 112, ¶ 6, where the phrase from which it derives antecedent basis admittedly does not do so.  This is independently fatal to Google's position.

The lack of the word "means" in the disputed phrase also raises a rebuttable presumption against applying Section 112, ¶ 6.  *Williamson*, 792 F.3d at 1348.  While the burden lies with Google to rebut the presumption, it failed to advance any argument or evidence in its Invalidity Contentions (or in its disclosure of extrinsic evidence) as allegedly rebutting, or even addressing, the presumption against applying Section 112, ¶ 6 to the "said processor …" claim language in question.

Courts have consistently and repeatedly rejected similar claim construction arguments that "processor configured to …" invokes 35 U.S.C. § 112, ¶ 6 as lacking any structural connotation. For example, in addressing claims directed to addressing image blur in a digital image, the Eastern District of Texas recently found "that the presumption against applying § 112, ¶ 6 to the 'processor ... configured to ...' terms stands."  *Clear Imaging Research, LLC v. Samsung Electronics Co., Ltd.*, Case No. 2:19-cv-00326-JRG, 2020 WL 6384731, *8-*9 (E.D. Tex. Oct. 30, 2020).  The Court further found that "[a]s used in the Asserted Patents, the term 'processor' is accorded its customary meaning of a class of structures on which software can run."  *Id.*  Among a multitude

of cases cited in support of its construction, the Court cited *Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.,* for the proposition that "'digital processing unit ... performing [functions]' found to be sufficiently definite structure in part because the claims provided operational context for the unit." *Id*. (citing Samsung, 948 F.3d at 1347–48, 1353–54). Those court findings are consistent with other ample authority of that sister district. *See*, *e.g.*, *Cypress Lake Software, Inc. v. Samsung Elecs. Am., Inc.*, 382 F. Supp. 3d 586, 660 (E.D. Tex. 2019), *reconsideration denied*, No. 6:18-CV-30-JDK, 2019 WL 4935280 (E.D. Tex. Aug. 23, 2019) (claim limitations reciting "device configured to … detect" were not means-plus-function limitations where "the claim language provides a description of how the processor is specifically programmed to operate"); *Realtime Data, LLC v. Rackspace US, Inc.*, 2017 WL 2590195, Case no. 6:16-CV-00961 RWS-JDL *15–*17 (E.D. Tex. June 14, 2017) (term "processor" in a claim reciting that the processor "was configured" to perform certain operations was not a means-plus-function limitation); *Cellular Commc'ns Equip. LLC v. AT&T, Inc.,* Case No. 2:15-CV-576-RWS-RSP, 2016 WL 7364266, at *15 (E.D. Tex. Dec. 19, 2016) ("processor configured to" was not a means-plus-function limitation and would be given its plain meaning—"Here, 'processor' is not a 'nonce' term, but rather connotes a class of structures").

The Southern District of Texas similarly found that "unlike terms such as 'means,' 'element,' and 'device' that typically do not connote structure, 'processor' can on its own recite at least some structure to persons of ordinary skill in the art." *Fisher-Rosemount Systems, Inc. v. ABB Ltd*, Case No. 4:18-CV-00178, 2019 WL 6830806, *15-*16 (S.D. Tex. Dec. 12, 2019). The Court also identified "several courts [which] have held that 'processor' can connote structure." *Id*. (collecting cases).

Under the circumstances, and in the absence of Google having timely disclosed any expert testimony to conclude otherwise, Google has not and cannot rebut the presumption against application of Section 112, ¶ 6, to the disputed phrase "said processor configured to provide a pre-emptive user output when the sub-set of pixels approaches an edge of the set of available pixels."

Dated: January 22, 2021                    Respectfully submitted,

                              By:    */s/ Ryan S. Loveless*
                                     James L. Etheridge
                                     Texas Bar No. 24059147
                                     Ryan S. Loveless
                                     Texas Bar No. 24036997
                                     Brett A. Mangrum
                                     Texas Bar No. 24065671
                                     Travis L. Richins
                                     Texas Bar No. 24061296
                                     Jeff Huang
                                     Etheridge Law Group, PLLC
                                     2600 E. Southlake Blvd., Suite 120 / 324
                                     Southlake, TX 76092
                                     Tel.: (817) 470-7249
                                     Fax: (817) 887-5950
                                     Jim@EtheridgeLaw.com
                                     Ryan@EtheridgeLaw.com
                                     Brett@EtheridgeLaw.com
                                     Travis@EtheridgeLaw.com
                                     Jeff@EtheridgeLaw.com

                                     Mark D. Siegmund
                                     State Bar No. 24117055
                                     mark@waltfairpllc.com
                                     Law Firm of Walt, Fair PLLC.
                                     1508 North Valley Mills Drive
                                     Waco, Texas 76710
                                     Telephone: (254) 772-6400
                                     Facsimile: (254) 772-6432

                                     *Counsel for Plaintiff WSOU Investments, LLC*

## **CERTIFICATE OF SERVICE**

A true and correct copy of the foregoing instrument was served or delivered electronically via U.S. District Court [LIVE]- Document Filing System, to all counsel of record, on January 22, 2021.

*/s/ Ryan S. Loveless*
Ryan S. Loveless